COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Malveaux, White and Senior Judge Annunziata
Argued at Fairfax, Virginia


WAYNE ANTHONY WARD

MEMORANDUM OPINION* BY
v.       Record No. 0913-24-4        JUDGE KIMBERLEY SLAYTON WHITE
                                     DECEMBER 30, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Donald M. Haddock, Judge

Eric Weathers, Assistant Public Defender, for appellant.

Lindsay M. Brooker, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


BACKGROUND

In 2023, appellant Wayne Anthony Ward reached a plea agreement with the

Commonwealth for failing to register as a Tier III sex offender as a second or subsequent offense

under Code § 18.2-472.1.  The trial court accepted Ward's plea agreement and entered a

sentencing order imposing a three-and-a-half-year prison term, with all but six months

suspended.  In accordance with Code § 19.2-295.2:1(A)(2), the trial court "impose[d] an added

term of post[-]release incarceration of two years."  Code § 19.2-295.2:1(B) also required that the

trial court place Ward on "electronic monitoring by means of a GPS (Global Positioning System)

tracking device, or other similar device during this period of post[-]release supervision."  While

on supervision, Ward's supervising officer imposed specific Sex Offender Special Instructions,

---

* This opinion is not designated for publication.  See Code § 17.1-413(A).

including a curfew, and the requirement that he receive permission from his officer to leave Prince William County.

Later, the trial court found Ward to be in violation of his suspended sentence based upon GPS violations and a new conviction. The trial court revoked the originally suspended sentence and resuspended all but the time Ward had served on that first violation.

On March 1, 2024, Ward's supervising officer wrote a major violation report (MVR) stating there was "no change in behavior since his previous violation." The MVR also said that since his supervised probation transfer to "Manassas Probation and Parole on October 16, 2023, his adjustment to the supervision has been problematic." A few days later, the Alexandria Probation and Parole office filed a letter with the MVR and submitted it to the trial court. In the letter, Ward's supervising officer stated that he had violated condition six of his offender special instructions by disregarding his curfew and the requirement to obtain permission to leave Prince William County. These violations occurred on multiple occasions between October 23, 2023, and February 15, 2024, thereby failing to "follow the instructions of the probation officer." Code § 19.2-306.1(A)(v).

Moreover, the conduct alleged in the second violation included breaches of condition eight, which prohibited unlawful use and possession of controlled substances and paraphernalia. The MVR alleged that Ward tested positive for alcohol, cocaine, and opioids on four occasions between December 2023 and February 2024 and also failed to report for urine screenings on three occasions during that period. The supervising officer further reported eleven "Home (inclusion) Zone" violations between the date Ward signed his GPS instructions on October 16, 2023, and February 2024. During this time, Ward received two battery violations for failing to properly charge his device. Additionally, he violated the substance abuse condition by refusing

- 2 -

to complete a recommended substance abuse evaluation after testing positive for cocaine on December 14, 2023.

On March 22, 2024, the Commonwealth filed a motion with the trial court to revoke Ward's post-release supervision and to arrest him for his GPS violations. The court issued the arrest warrant four days later. On April 15, 2024, the Commonwealth filed Ward's supervising officer's original post-release MVR, as well as an addendum that included additional alleged violations. In the new reports, Ward's supervising officer stated that he had violated curfew restrictions, did not maintain contact with his parole officer or GPS monitoring officer, and could not be located from March 25, 2024, to April 1, 2024. Also alleged were three GPS monitoring violations: one battery violation and two "bracelet-gone" violations. At the time of his arrest, Ward was not wearing his GPS monitoring equipment, and he was unaware of its location.

TRIAL COURT'S RULING

At trial, the court considered the Commonwealth's motion to revoke Ward's post-release suspension imposed pursuant to Code § 19.2-295.2:1. After hearing testimony from Ward's supervising officer, the court found him guilty of violating his post-release conditions. These violations included disobeying instructions to stay within curfew and Prince William County, testing positive for drugs and alcohol, failing to follow GPS monitoring conditions, and ignoring directions to complete a substance abuse evaluation.

Ward stipulated to the factual allegations of his post-release supervision violations set forth in the MVR. However, he disagreed with the Commonwealth's characterization of those violations. His counsel argued that the procedures for post-release suspension hearings under Code § 19.2-295.2:1 required application of the procedures and sentencing restrictions outlined in Code § 19.2-306.1 for probation violation hearings, specifically for classifying technical and non-technical violations. According to Ward's counsel, all his violations were technical

- 3 -

violations under Code § 19.2-306.1, which would prohibit a trial court from imposing more than 14 days of incarceration for a second or subsequent offense.

The trial court, however, rejected this interpretation. The court held that it was not bound by Code § 19.2-306.1's sentencing limitation because it was a post-release hearing, not a probation hearing. Therefore, the trial court concluded that it was not limited by the sentencing restrictions in Code § 19.2-306.1 and was entitled to impose the remaining portion of Ward's sentence.

The court also agreed with the Commonwealth's argument that, even if it had to follow Code § 19.2-306.1's sentencing limitation, the GPS violations were non-technical violations. The court held that all of Ward's violations were technical violations except his GPS monitoring violations. Ward, however, argued that he was fully compliant with the court imposed requirement of GPS monitoring because he was being monitored. Ward's counsel argued that his GPS monitoring violations were technical violations because the sentencing judge did not explicitly state them in the post-release sentencing order. Instead, his "bracelet-gone" and failing to charge his GPS battery violations were rules created by his parole officer, not the court. Therefore, his GPS monitoring violations should be considered a technical violation under Code § 19.2-306.1(A)(v) for failing to "follow the instructions of the probation officer."

Once again, however, the trial court rejected Ward's interpretation and agreed with the Commonwealth's argument. The trial court held that because the original sentencing judge explicitly required Ward to follow GPS monitoring in the post-release sentencing order, his parole officer's rules regarding that order were included in the monitoring requirements. Therefore, Ward's failure to comply with those regulations was considered a non-technical violation of the court ordered GPS monitoring requirements. The trial court held that it was not limited by the sentencing restrictions in Code § 19.2-306.1. As a result, Ward's two-year post-

release incarceration suspension was revoked and one year was resuspended, leaving him incarcerated for a year.

ANALYSIS

Under the "Best and Narrowest Grounds" Doctrine, we assume without deciding that Code § 19.2-306.1 applies to post-release supervision violations. "As we have often said, '[t]he doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (per curiam)). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). Therefore, courts should resolve cases on grounds supported by precedent rather than unnecessarily rule on novel issues of first impression. "That conclusion is particularly true when the holding attempts to resolve a difficult interpretative question and a simpler answer is readily available." *Id.* In contrast, "[t]he 'narrowest' answer to a legal question is the one affecting the least number of cases." *Id.* Because there are a multitude of factual scenarios that may be unforeseeable when addressing a particular legal issue, "a degree of judicial caution should accompany any holding that reaches out beyond the limits of the particular case to address unnecessary and novel issues." *Id.* at 397.

Here, two issues are presented. First, we are presented with the novel issue of whether the sentencing procedures outlined in Code § 19.2-306.1 apply to post-release supervision violations under Code § 19.2-295.2:1. Second, if those procedures do apply, we are presented with the more settled issue of whether Ward's GPS monitoring violations constitute technical or non-technical violations. Because the second issue involves a readily available answer to a straightforward question that is supported by numerous precedents, it provides the best grounds

- 5 -

for deciding this case. Furthermore, it is also the narrowest grounds because ruling on a novel statutory issue would significantly affect more cases and is unnecessary for deciding this case. As a result, consistent with the doctrine of judicial restraint, we assume without deciding that the procedures outlined in Code § 19.2-306.1 apply to post-release supervision violations under Code § 19.2-295.2:1. Thus, the sole issue we will decide is whether Ward's GPS monitoring violations constitute technical or non-technical violations.

Ward argues that the trial court erred in imposing an active sentence of one year because it exceeded the trial court's statutory authority under Code § 19.2-306.1. However, we disagree.

## A. Standard of Review

For a post-release sentencing appeal, "the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022)). Under Code § 19.2-306(A), trial courts have the authority to "revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." "We have consistently held that the 'revocation of a suspended sentence lies in the discretion of the trial court and that this discretion is quite broad.'" *Commonwealth v. Delaune*, 302 Va. 644, 658 (2023) (quoting *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004)). If the trial court, after a hearing, believes the defendant violated any terms or conditions of his suspended sentence order, it "may revoke the suspension and impose a sentence in accordance with the provisions of Code § 19.2-306.1." Code § 19.2-306(C).

## B. Distinguishing Technical and Non-Technical Violations under Code § 19.2-306.1

"Code § 19.2-306.1 limits the period of active incarceration that a circuit court can impose for what the statute refers to as certain 'technical violations' enumerated under the new

- 6 -

statute [Code § 19.2-306.1(A)]." *Heart*, 75 Va. App. at 460-61 (quoting *Green*, 75 Va. App. at 78). "Whereas Code § 19.2-306(C) does not distinguish between types of violations, Code § 19.2-306.1 creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Id.* at 466. The violations listed in Code § 19.2-306.1(A) are technical violations imposed by parole officers on all probationers. *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 193 (2023). In contrast, a non-technical violation is any "criminal offense that was committed after the date of the suspension, or [a violation of] another condition other than (i) a technical violation or (ii) a good conduct violation that did not result in a criminal conviction." Code § 19.2-306.1(B).

Different rules apply for "technical" or "non-technical" violations of a suspended sentencing order under Code § 19.2-306.1. Code § 19.2-306(A)-(C). Under Code § 19.2-306.1, "[a] [circuit] court may not impose a term of active incarceration based on a first technical violation." *Delaune*, 302 Va. at 656. After a second technical violation, however, a circuit court "may impose a maximum term of 14 days of active incarceration." *Id.* In contrast, for non-technical violations, "the court may revoke the suspension and impose or resuspend any or all of that period previously suspended." Code § 19.2-306.1(B).

### C. The Four-Step Classification Framework under *Diaz-Urrutia*

Since *Diaz-Urrutia*, we have required "a sentencing court [to] engage in a four-step process to classify the basis of the revocation proceeding before determining what sentence it may impose." 77 Va. App. at 193. "First, the court must determine whether 'the violation conduct matches the conduct [specifically] listed in Code § 19.2-306.1(A).'" *Id.* (alteration in original) (quoting *Delaune v. Commonwealth*, 76 Va. App. 372, 383 (2023)). "If so, then the defendant has committed a technical violation and the sentencing limitations found in Code § 19.2-306.1(A) apply, regardless of whether the sentencing court included that conduct as

'another condition' of the defendant's suspended sentence." *Id.* at 194. Second, "[i]f the violation conduct does not match the conduct listed in Code § 19.2-306.1(A), the court must then determine whether 'another condition,' other than the generic good behavior condition of the defendant's suspended sentence covers the conduct." *Id.* "If so, then the court's sentencing authority is not restricted by Code § 19.2-306.1." *Id.* Third, "[i]f the defendant's sentencing order contained no other condition matching the violation conduct, then the court must determine whether the conduct resulted in a new criminal conviction." *Id.* "If so, then the court's sentencing authority is not restricted by Code § 19.2-306.1." *Id.* "Finally, if none of the above apply, then the court must determine whether the defendant has engaged in substantial misconduct amounting to a good conduct violation." *Id.*

D. The Court's Precedent: Distinguishing Officer Supervision from Court-Imposed Conditions

This court's precedent has been clear that "not every condition supervised by a probation officer falls under the arguably broad category of Code § 19.2-306.1(A)(v) that a probationer must 'follow the instructions of the probation officer.'" *Shifflett v. Commonwealth*, 81 Va. App. 277, 291 (2024). Instead, "[t]he circuit court must have the authority to delegate supervision of its special condition programs to probation without such supervision inherently becoming a technical violation." *Id.* at 295. "Essentially, while the circuit court sets the terms and conditions of probation, probation officers enforce those terms and conditions and exercise discretion in doing so." *Id.* at 298 (quoting *Fazili v. Commonwealth*, 71 Va. App. 239, 255 (2019)). Indeed, our "precedents make clear that we must interpret a circuit court's orders broadly to preserve its ability to delegate the day-to-day supervision of probationers to the probation office without depriving it of the broad 'latitude' and rehabilitative tools necessary for reforming offenders." *Jalal v. Commonwealth*, No. 0060-24-2, slip op. at 7 (Va. Ct. App. Apr. 8,

- 8 -

2025).[1]  Therefore, when "determining whether an instruction was given by a probation officer, an imperative factor to consider is whether the circuit court or the probation officer imposed the condition."  *Terry v. Commonwealth*, 81 Va. App. 241, 249-50 (2024).

E.  Applying *Diaz-Urrutia* and *Anderson*: Ward's Violations Were Non-Technical

Here, we only need to reach the second part of the *Diaz-Urrutia* analysis to categorize Ward's second post-release supervision violation.  A trial court is not restricted by sentencing limitations in Code § 19.2-306.1 if the post-release violation satisfies three conditions.  Under past cases, we have classified a violation as non-technical when "[1] the circuit court imposed the condition, [2] the condition is not among those listed in Code § 19.2-306.1(A), and [3] the probation officer merely supervised its implementation."  *Id.* at 250.  Therefore, once these three elements are satisfied, the violation is non-technical and thus "does not constitute a failure to follow the instructions of the probation officer within the meaning of Code § 19.2-306.1(A)(v)." *Id.*

This case is analogous to *Anderson v. Commonwealth*, No. 1208-23-2 (Va. Ct. App. Aug. 20, 2024).[2]  In *Anderson*, we affirmed a trial court's ruling that the defendant's GPS monitoring violations were non-technical violations and thus could provide the basis for the defendant to serve a year of his remaining suspended sentence.  *Id.*, slip op. at 6-7.  In that case, the defendant argued that his GPS violations were merely technical because he had satisfied the GPS monitoring requirements in the original sentencing order, and his alleged violations stemmed only from his probation officer's own GPS monitoring rule.  *Id.* at 3.  Thus, he argued that he

---

[1] "Unpublished opinions of this Court, while having no precedential value, are nevertheless persuasive authority."  *Samartino v. Fairfax Cnty. Fire & Rescue*, 64 Va. App. 499, 508 n.2 (2015).

[2] *See supra* footnote 1.

had simply failed to follow his parole officer's instructions, a technical violation under Code § 19.2-306.1(A)(v). *Id.*

Nevertheless, the court found the defendant's GPS monitoring device violations to be non-technical violations because the circuit court's original sentencing order explicitly required the defendant to comply with the GPS monitoring requirements. *Id.* at 6-7. In other words, since the circuit court imposed the GPS monitoring condition, the parole officer's GPS monitoring rules were an extension of that condition. *Id.* Therefore, when the defendant violated the GPS monitoring requirements, it was a violation of the circuit court's original sentencing order, not the parole officer's instructions. *Id.* Moreover, we found that his GPS monitoring violations did not match any of the technical conditions listed in Code § 19.2-306.1(A) and that his parole officer merely supervised the GPS monitoring requirements. *Id.* at 6. Hence, we affirmed the trial court's ruling that these were non-technical violations and thus could require the defendant to serve a year of incarceration. *Id.* at 6-7.

Although Ward's probation officer supervised his compliance with GPS monitoring requirements, like *Anderson*, his failure to meet those requirements does not constitute a technical violation for failing to follow the officer's instructions. Because the trial court, not the parole officer, explicitly imposed the GPS monitoring condition in Ward's original sentencing order, the rules regarding charging and tracking the device are conditions imposed by the trial court. Therefore, when Ward violated his parole officer's GPS monitoring rules, he violated a condition imposed by the trial court. Furthermore, because Ward's violations, such as the bracelet being gone or the low battery, are not among the technical violations listed in Code § 19.2-306.1(A), and involve rules supervised by the parole officer, they are non-technical violations. Therefore, Ward's conduct constitutes a non-technical violation. Thus, we reject

Ward's argument that the trial court exceeded its authority when it revoked his two-year post-release incarceration suspension and resuspended one year, leaving him incarcerated for a year.

CONCLUSION

For the foregoing reasons, we affirm the trial court's ruling that required Ward to serve a year of incarceration.

*Affirmed.*